**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNELLY J. LEBLANC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | No. 10-5215 |
| | : | |
| **CRAIG STEDMAN,** *et al.* | : | |

**MEMORANDUM OPINION**

Savage, J.                                                                                                              December 12, 2011

**Background**

In this *pro se* civil rights action brought under 42 U.S.C. § 1983, plaintiff Donnelly LeBlanc asserts claims for false arrest, false imprisonment, and malicious prosecution stemming from his arrest on January 8, 2008. LeBlanc named seven defendants: Craig Stedman, Brian Chudzic, and Dean Morgan of the Lancaster County District Attorney's Office; Thomas Zell, chief of the Akron Borough Police Department; George Pappas, a detective in the Penn Township Police Department; John Doe, chief of Penn Township Police Department; and Lancaster County. The complaint has been dismissed as to Morgan, Stedman, Chudzic, Doe, and Lancaster County; and summary judgment has been granted in favor of Zell. Pappas, the only remaining defendant, has now moved for summary judgment.

The following facts are undisputed. On October 7, 2007, LeBlanc and his wife Darla were engaged in a heated argument at their home. During the fracas, Darla attempted to leave in her Mercury Sable. As she tried to pull out of the driveway, LeBlanc slammed his Chevrolet pickup truck into his wife's car. The force of the collision shoved the rear of the Mercury into the LeBlancs' porch.

LeBlanc and Darla then drove separately to their friends' home nearby. Pappas and an officer from the Manheim Borough Police Department encountered them there in response to a report of a domestic disturbance. After photographing the car and interviewing LeBlanc, Darla, and their friends, Pappas had the car towed to Garmen's Garage nearby. Pappas arrested LeBlanc for assault and recklessly endangering another person. LeBlanc does not challenge the validity of this arrest.

Shortly after the incident, Pappas warned LeBlanc's insurance agent, Christine Flomerfelt, that LeBlanc might attempt to file a false insurance claim.[1] Around October 10, LeBlanc went to Flomerfelt's office and sought reimbursement for the towing bill. He told Flomerfelt's assistant, Angela Neifert, that he was driving the Mercury when it blew a tire, causing him to lose control and hit a tree. He suggested that a bystander must have seen him driving the car home and called the police to assist him. LeBlanc said that he was not filing an insurance claim for the damage to the car because it was old and he wanted to replace it anyway.

Recalling the warnings about LeBlanc, Neifert discussed the matter with Flomerfelt, who referred the file to State Farm. Flomerfelt informed State Farm that LeBlanc's account was inconsistent with the information she had received from the police.

LeBlanc disputes several aspects of the police report's account of his fight with Darla. According to the police report, LeBlanc rammed his truck into his wife's car twice. LeBlanc claims that he only did so once, and that Darla then accelerated her car into

---

[1] It is unclear from the record when or how Pappas did so. It is also unclear whether Pappas warned the agent's office directly or contacted State Farm, the company that insures the LeBlancs' automobiles. Nevertheless, it is uncontested that the agent's office received a warning about LeBlanc's potentially false claim.

2

LeBlanc's truck. He argues that the skid marks in their driveway and the damage to the Mercury support his claim. The police report also states that Darla drove her car to the friends' home and that LeBlanc followed. LeBlanc counters that he drove there first to escape the situation and that Darla followed him. These disputed facts about how many times LeBlanc struck Darla's car and who initially drove to the friends' house are immaterial.

LeBlanc does not dispute that he was not truthful with Flomerfelt and Neifert about how the Mercury was damaged. He admits he wrecked the Mercury during the fight with his wife because he wanted to purchase a new car. His wife had been urging him to fix the Mercury and he decided to "fix it permanently." LeBlanc Dep. 74:5-19, June 23, 2011. His excuse for lying to his insurance agents was that he did not think they would understand his reasoning, and the cause of the damage was not relevant to the towing reimbursement. He contends that State Farm provides complementary towing reimbursement to its long-time customers regardless of how the car became disabled. LeBlanc claims that because he was only seeking reimbursement for the towing bill, Flomerfelt and Neifert did not need to know what happened to the Mercury.

While State Farm was reviewing LeBlanc's reimbursement request, Darla called Flomerfelt's office and asked about the status of the payment. During this conversation, Darla gave Neifert a different account of how the Mercury was damaged. She told her that LeBlanc had hit a tree along the street on which she and LeBlanc lived. LeBlanc had told the agent that he hit a tree along nearby Route 322. When Neifert told Darla about the discrepancy, Darla initially tried to insist that her account was correct, but then quickly ended the call.

3

During the course of its investigation, State Farm obtained a copy of the police report. The State Farm investigators saw that the report's account of how the Mercury was damaged was very different from LeBlanc's. They contacted Pappas, who was listed as an investigating officer on the report, to obtain more information.

After his conversation with the State Farm investigators, Pappas spoke to the assistant district attorney about bringing charges against LeBlanc. Zell, the police chief, then obtained an arrest warrant and instructed Pappas to arrest LeBlanc. LeBlanc was arrested on January 8, 2008, and charged with insurance fraud and conspiracy to commit insurance fraud in violation of Pennsylvania law. Those charges were eventually dropped.

Pappas claims that the charges were *nol prossed* because LeBlanc had already been convicted of involuntary deviate sexual intercourse and other related crimes, which carry a much heavier penalty than insurance fraud.[2] He contends that the prosecutor determined that any sentence for insurance fraud would run concurrently with the sentence LeBlanc was already serving, and thus there was no reason to proceed with the insurance fraud charges. Pappas also claims that the prosecutor declined to prosecute the case because LeBlanc had been arrested before State Farm suffered any harm.

LeBlanc denies Pappas's account and argues that the charges were dropped because they lacked merit. He argues that any insurance fraud sentence would likely have run consecutively to the sentence he was serving.

Construed liberally, the complaint alleges that Pappas violated LeBlanc's Fourth

---

[2] LeBlanc was sentenced to serve 25 to 50 years in Pennsylvania state prison for involuntary deviate sexual intercourse on a person less than sixteen years of age, aggravated indecent assault, corruption of minors, and indecent assault. A jury found him guilty in July 2009 of engaging in sexual activity with his stepson.

4

Amendment right to be free from seizure without probable cause arising out of false arrest, false imprisonment, and malicious prosecution. He claims that Pappas lacked probable cause to arrest him because he acted outside his jurisdiction and knowingly provided false information to support the arrest warrant. Pappas has moved for summary judgment on all of these claims, arguing that LeBlanc cannot establish the required elements of his causes of action at trial.

**Standard of Review**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory

5

allegations, or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (1986) (citation and internal quotations omitted).

## Discussion

### False Arrest and False Imprisonment

To succeed on his false arrest and false imprisonment claims, LeBlanc must establish that Pappas did not have probable cause to arrest and detain him. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-35 (3d Cir. 1995); *see also Johnson v. Bingnear*, No. 11-1871, 2011 WL 3346793, at *2 (3d Cir. Aug. 4, 2011). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990)). The issue is not LeBlanc's actual innocence or guilt, but rather whether the arrest was supported by probable cause. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). Typically, the question of whether the officer had probable cause is one of fact for the jury. *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998) (citing *Patzig v.O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978)); *Groman*, 47 F.3d at 635. Therefore, summary judgment is only appropriate if a reasonable jury could not conclude from the evidence

presented that Pappas lacked probable cause. *See Sherwood v. Mulvihill*, 113 F.3d 396, 400-01 (3d Cir. 1997).

At the outset, we reject LeBlanc's argument that his arrest was improper because Pappas arrested him outside his jurisdiction. Even if Pappas had done so, the arrest was not necessarily improper.[3] An arrest made with probable cause is constitutionally valid even where it is done in violation of state law. *See United States v. Sed*, 601 F.3d 224, 228-29 (3d Cir. 2010) (holding that Pennsylvania state police officers' arrest of the defendant in Ohio was constitutionally valid because it was done with probable cause, even if it violated Ohio law (citing *Virginia v. Moore*, 553 U.S. 164, 171, 174-76 (2008))); *see also Schultz v. Hughesville Borough*, No. 10-0262, 2011 WL 3273076, at *11 (M.D. Pa. July 29, 2011) (holding that an arrest was valid even if the arresting officer acted outside his jurisdiction); *McDonald v. Darby Borough*, No. 07-4588, 2008 WL 4461912, at *3 (E.D. Pa. Oct. 3, 2008) (same); *Armstead v. Twp. of Upper Dublin*, 347 F. Supp. 2d 188, 194 (E.D. Pa. 2004) (same); *Carter v. Bartle*, No. 89-8921, 1990 WL 156543, at *1 (E.D. Pa. Oct. 9, 1990) (same).

We now turn to the merits of LeBlanc's probable cause argument. An individual commits insurance fraud in Pennsylvania when he:

> [k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

---

[3] The police were concerned about a jurisdictional issue when they pursued the arrest warrant against LeBlanc. LeBlanc made the allegedly false insurance claim in Akron, PA, where Flomerfelt's office is located. Assistant District Attorney Morgan advised Pappas to have someone from the Akron Borough Police Department co-sign the affidavit supporting the arrest warrant. Chief Zell agreed to sign it.

18 Pa. C.S.A. § 4117(a)(2)(West. 2011). LeBlanc must prove that a reasonable officer in Pappas's position could not have had probable cause to believe that LeBlanc had committed or was attempting to commit this offense. *See Wright*, 409 F.3d at 601 ("To determine whether an arrest is valid, we look to the law of the state where the arrest took place." (citing *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002))).

LeBlanc argues that Pappas did not have probable cause because he obtained the arrest warrant by knowingly falsifying information in the police report and the supporting affidavit. LeBlanc claims that Pappas knew he had not committed any offense, but lied so he could arrest him. LeBlanc is correct that a police officer's own statement of the facts, if contradicted by the plaintiff, is insufficient to show that the officer had probable cause on motion for summary judgment. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004) ("We cannot allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence.").

Although LeBlanc argues that Pappas's malevolent intent negated probable cause, the determination of whether probable cause existed is based on an objective analysis of the relevant facts and circumstances, rather than on the subjective intent of the arresting officer. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (holding that probable cause may be present objectively even if the officer had improper motives (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996))).

To prove that Pappas's alleged falsifications rendered the arrest unlawful, LeBlanc must show: "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in

applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood*, 113 F.3d at 399 (quotations omitted)).

LeBlanc contends that Pappas knew he did not commit insurance fraud because he had not filed an insurance claim. He argues, without submitting any proof, that the towing reimbursement was not part of his insurance policy with State Farm, which covered only damages to the vehicle, but rather was a complementary service offered to its long-time customers. Thus, according to LeBlanc, when he requested reimbursement for the towing bill, he was not filing a claim on his insurance policy.

LeBlanc offers no evidence that Pappas made this alleged omission with the requisite *mens rea*. LeBlanc relies on his unsubstantiated assertions. There is nothing in the record showing or tending to show that Pappas knew or should have known that LeBlanc had not submitted an insurance claim. *See Blanchard v. Gallick*, No. 11-2957, 2011 WL 4867556, at *2 (3d Cir. Oct. 14, 2011) (holding that a conclusory allegation of liability is insufficient to avoid summary judgment (citing *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972))). Rather than producing his own evidence contradicting the assertion in the warrant, LeBlanc tries to create the appearance of genuine issues of material fact by criticizing the sufficiency of Pappas's evidence. LeBlanc argues that Pappas has not produced a copy of the State Farm insurance contract, which LeBlanc claims would prove that towing expenses are not part of his policy, or any proof that he submitted a claim. He criticizes other evidence as inauthentic or unpersuasive.

LeBlanc cannot create a genuine issue of material fact simply by suggesting that a

jury might not believe Pappas's testimony. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the defendant-official has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility. . . .") (citations omitted); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) ("We can reject out of hand . . . that the plaintiff can avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered [evidence]. . . ."). He must put forward his own evidence from which a jury could conclude that Pappas lacked probable cause.[4]

Contrary to LeBlanc's assertions, the undisputed evidence shows that Pappas had probable cause to believe that LeBlanc had made a false insurance claim. Based on the information from State Farm and his own investigation, Pappas knew that LeBlanc had lied to Flomerfelt and Neifert about how the Mercury was damaged. He reasonably concluded from information learned from State Farm that LeBlanc had made an insurance claim. Flomerfelt, Neifert, and the State Farm investigators understood LeBlanc to be making a claim on the Mercury's insurance policy. State Farm investigated and reported the claim for fraud. State Farm then communicated the findings to Pappas.

The issue is not whether LeBlanc actually made an insurance claim under the terms

---

[4] A plaintiff can also prevail on a false arrest or false imprisonment claim by showing that the arresting officer conducted a constitutionally deficient investigation such that the officer ignored reasonably discoverable exculpatory evidence. *See Kingsland*, 382 F.3d at 1228-29 (holding that an officer may not "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts"); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). However, "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Kingsland*, 382 F.3d at 1229 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (internal quotations omitted)), and has "no general duty to investigate further after acquiring information sufficient to establish probable cause." *BeVier*, 806 F.2d at 127, n. 1 (citing *Gramenos v. Jewel Cos.,* 797 F.2d 432, 437-42 (7th Cir. 1986)).
    Pappas had no duty to read through the provisions of LeBlanc's insurance contract and interpret their meaning. He reasonably relied on State Farm's belief that LeBlanc had submitted a false insurance claim.

of his policy. Rather, the issue is whether a reasonable officer in Pappas's place could have had probable cause to believe that he had. It was State Farm, the alleged victim, that concluded that LeBlanc had attempted to defraud the company. Any reasonable police officer would have acted upon the information Pappas had gathered from his own investigation and State Farm. This information established probable cause.

LeBlanc also claims that Pappas falsely stated that he rammed his wife's car twice, when he really only did so once, and that he followed his wife to their friends' house, when she really followed him. These disputed facts are immaterial to the finding of probable cause. *See Wilson*, 212 F.3d at 789 ("To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." (citing *Sherwood*, 113 F.3d at 399)). Pappas had probable cause because he knew LeBlanc lied to Flomerfelt and Neifert and had reason to believe that LeBlanc had made an insurance claim based on that lie. The exact details of LeBlanc's fight with his wife are irrelevant. The only relevant fact stemming from the fight is that he, contrary to what he later told his insurance agent, intentionally damaged the Mercury, a fact he now admits.

## Malicious Prosecution

To succeed on his malicious prosecution claim, a plaintiff must prove that: "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the

11

plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[5] *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). LeBlanc cannot prove that Pappas lacked probable cause to initiate criminal proceedings against him for the same reason he cannot prove that the detective lacked probable cause to arrest and detain him.[6] He offers no evidence that Pappas knew or should have known that he had not submitted a false insurance claim.

## Conclusion

LeBlanc has failed to produce evidence sufficient to prove that Pappas lacked probable cause to arrest, detain, and initiate criminal proceedings against him. Therefore, we shall grant Pappas's motion for summary judgment.

---

[5] A police officer often cannot be held liable for malicious prosecution because the prosecutor, rather than the officer, initiates criminal proceedings. *See Harris v. City of Phila.*, No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998). In this case, however, LeBlanc argues that Pappas caused the prosecutor to initiate criminal proceedings by knowingly making the false statement that LeBlanc had submitted an insurance claim. Thus, we consider LeBlanc's malicious prosecution claim in conjunction with his false arrest and false imprisonment claims. *See Johnson*, 2011 WL 3346793, at *3.

[6] Pappas also argues that LeBlanc fails to show that the case was terminated in his favor and that Pappas acted maliciously. Because we conclude that LeBlanc cannot prove that Pappas lacked probable cause, we need not consider these arguments.